IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:24-cv-00091-MR-WCM

| | |
|---|---|
| ANGELA BURRELL, *individually and as parent and next friend of G.C. and as parent and next friend of B.C.*; G.C., *by and through ANGELA BURRELL as his natural guardian, parent, and friend*; and B.C., *by and through ANGELA BURRELL as her natural guardian, parent, and friend*, <br><br> Plaintiffs, <br><br> v. <br><br> POLK COUNTY; POLK COUNTY DEPARTMENT OF SOCIAL SERVICES; PHILLIP R. FEAGAN, *in both his individual capacity and his official capacity as attorney for Polk County Department of Social Services*; JOSHUA KENNEDY, *in both his individual capacity and his official capacity as Director of Polk County Department of Social Services*; KIM WILSON, *both in her individual capacity and her official capacity as Director of Polk County Department of of Social Services*; ROBIN ELLIOT, *both in her individual capacity and her official capacity as an employee of Polk County Department of Social Services as DSS Supervisor*; MELANI LAINHART SPLAIN, *both in her individual capacity and her official capacity as an employee of Polk County Department of Social* | MEMORANDUM AND RECOMMENDATION |

1

| | |
|---|---|
| *Services as DSS Foster Care Supervisor;* | ) |
| **LISA CONDREY,** *both in her individual* | ) |
| *capacity and her official capacity as an* | ) |
| *employee of Polk County Department* | ) |
| *of Social Services as DSS Social Worker;* | ) |
| **KELSEY REEDY,** *both in her individual* | ) |
| *capacity and her official capacity as an* | ) |
| *employee of Polk County Department* | ) |
| *of Social Services as DSS Social Worker;* | ) |
| **CHLOE PEARCE,** *both in her individual* | ) |
| *capacity and her official capacity as an* | ) |
| *employee of Polk County Department* | ) |
| *of Social Services as DSS Social Worker;* | ) |
| and **SUSAN GREEN,** *both in her* | ) |
| *individual capacity and her official* | ) |
| *capacity as an employee of Polk County* | ) |
| *Department of Social Services as DSS* | ) |
| *Social Worker,* | ) |
| | ) |
| **Defendants.** | ) |
| _____ | ) |

This matter is before the Court on the following:

1. A Motion to Dismiss Amended Complaint (Doc. 12) filed by Defendants Polk County, Polk County Department of Social Services ("PCDSS"), Joshua Kennedy, Kim Wilson, Robin Elliott, Melani Lainhart Splain, Lisa Condrey, Kelsey Reedy, Chloe Pearce, and Susan Green, (collectively, the "Polk County Defendants"),[1] and

2. A Motion to Dismiss Plaintiffs' Complaint (Doc. 22) filed by Defendant Phillip R. Feagan ("Feagan").

Both Motions have been referred to the undersigned pursuant to 28 U.S.C. § 636 for the entry of a recommendation.

---

[1] Although the Motion is made on behalf of all Polk County Defendants, including Chloe Pearce, the record does not reflect service on Ms. Pearce. See Doc. 20-1.

## I. Procedural History

On April 1, 2024, Angela Burrell ("Burrell"), individually and as parent and next friend of G.C. and B.C.; G.C., by and through Burrell; and B.C., by and through Burrell (collectively, "Plaintiffs") filed their original Complaint. Doc. 1.

Plaintiffs filed an Amended Complaint on April 23, 2024. Doc. 4.

In response, the Polk County Defendants and Feagan filed the Motions to Dismiss. Docs. 12, 13, 22, 23. Plaintiffs have responded to both Motions, Doc. 26, and Defendants have replied. Docs. 27, 29.

## II. The Amended Complaint and Related Court Records

### A. Timeline of Events

The Amended Complaint does not include dates on which certain events occurred and does not always appear to describe the alleged facts in chronological order. Consequently, the following represents the undersigned's attempt to set forth a timeline of the events that appear to form the bases of Plaintiffs' claims.[2]

---

[2] Plaintiffs' claims arise out of the placement of G.C. and B.C. in foster care and related custody proceedings in Polk County District Court (the "State Custody Cases"). The Polk County Defendants have submitted multiple orders entered in the State Custody Cases. See Docs. 14–17. These documents may be considered; Plaintiffs have not objected to the submission of these documents, and they are referenced in the Amended Complaint sufficiently or are matters of public record. See Epcon Homestead, LLC v. Town of Chapel Hill, 62 F.4th 882, 885 (4th Cir. 2023) (citing U.S. ex rel. Oberg v. Pa. Higher Educ. Assistance Agency, 745 F.3d 131, 136 (4th Cir.

Burrell is the biological mother of B.C. and G.C. (the "Minor Plaintiffs"). Doc. 4 at ¶ 43. In 2018, she and the biological father of the Minor Plaintiffs were arrested on drug charges. Id. at ¶ 44.

On August 8, 2018, PCDSS filed a petition alleging that B.C. and G.C. were abused, neglected, and dependent, thereby initiating the State Custody Cases. Doc. 13 at 4; Doc. 14 at ¶ 2. That same day, a state district judge issued a non-secure custody order placing B.C. and G.C. in the care of PCDSS; B.C. and G.C. were subsequently placed in separate foster homes. Doc. 13 at 4–5; Doc. 14 at ¶ 6; Doc. 4 at ¶¶ 52, 53, 56, 57.

On September 11, 2018, a hearing was conducted in the State Custody Cases regarding PCDSS's petition. Doc. 14. Following that hearing, the court found that G.C. and B.C. were "Neglected and Dependent juveniles," but that "an initial permanent plan of reunification with a parent [was] appropriate." Id. at 10. The legal care, custody, and control of the Minor Plaintiffs was "granted to and continued with" PCDSS, PCDSS was ordered to "make reasonable efforts toward reunification," and Burrell was granted visitation rights and placed under certain restrictions and requirements. Id. at 10-11.

---

2014)). A Motion to Seal these documents has also been submitted and is being granted by separate order. The contents of these documents are referenced here only to the extent necessary.

Following another hearing in the State Custody Cases, which was held some years later on December 2, 2022, the court found that Burrell had maintained stable and safe housing, was employed, and was attending therapy. Doc. 15. During that hearing, PCDSS recommended that legal custody of B.C. be returned to Burrell, but that G.C. remain in foster care. Doc. 15. The court ordered that legal custody of B.C. be returned to Burrell. It also found it was in the best interest of G.C. to remain in his current foster placement, with Burrell continuing to have visitation rights. Id.

It appears that G.C. remains in the custody of PCDSS, and that his placement with his current foster family continues.

### B. Burrell's Claims

Burrell alleges that B.C. was initially placed with foster parents who abandoned her at a hospital, that B.C. was later placed in "juvenile hall" for several months, and that B.C. was subsequently placed with another foster family. Doc. 4 at ¶¶ 52–53.

At some unspecified time, PCDSS tendered an offer to Burrell's counsel "in the PCDSS matter, whereby PCDSS would return [B.C.] to [Burrell] if [Burrell] would sign over her rights" to G.C. Id. at ¶ 50. Burrell contends that PCDSS stated that she could "go to jail" if she did not relinquish her parental rights to G.C. Id. at ¶ 51. Burrell did not accept this offer.

5

Thereafter, B.C.'s "foster family came to an agreement to return [B.C.] to [Burrell's] custody," but PCDSS did not facilitate that agreement and "made no attempt to reunite" Burrell with B.C. Id. at ¶ 53. Nonetheless, B.C. was returned to Burrell's home. Id. at ¶ 54.

With respect to G.C., Burrell alleges that G.C. has been placed with a friend of Defendant Elliott, and that this person "has substantial funds in comparison" to Burrell, takes G.C. on "extravagant vacations," buys G.C. "extravagant gifts," and has "otherwise alienate[d] [G.C.] from his mother and siblings." Id. at ¶¶ 56–57. Burrell also contends that G.C.'s foster parents have disparaged her to such a degree that G.C. "tells [Burrell] that he hates her and never wants to see her." Id. at ¶ 58.

Burrell further alleges that when she was in the hospital after the birth of her third child, V.C., PCDSS "brought new allegations regarding [G.C.]," and that "the continued unfounded allegations being brought by PCDSS" have resulted in "multiple emergency medical examinations" of G.C. Id. at ¶¶ 59–60.

Burrell asserts that she has completed rehabilitation, has been sober for "at least the last three (3) years," has "gone to college and has earned her CNA certificate," and has "complied with all recommendations of PCDSS, including four (4) parenting classes and ongoing substance abuse treatment and

6

Case 1:24-cv-00091-MR-WCM   Document 31   Filed 03/03/25   Page 6 of 15

counseling." Id. at ¶¶ 46–47, 62.³ Burrell contends that despite her actions, PCDSS failed to make reasonable efforts at reunification and instead "offered a return of custody of [B.C.] in exchange for the signing away of parental rights for [G.C.]" – which showed there was no basis to continue G.C.'s foster care arrangement. Id. at ¶¶ 73, 75.

Plaintiffs bring a "42 USC 1983 civil rights claim,"⁴ as well as state law claims for intentional and negligent infliction of emotional distress, false imprisonment, and negligence. Plaintiffs seek monetary damages and request that "full custody of [G.C.] to be returned to" Burrell. Id. at ¶¶ 26–27.

## III. Discussion

### A. Burrell's Standing to Assert Claims on Behalf of G.C.⁵

"An action must be prosecuted in the name of the real party in interest." Fed. R. Civ. P. 17(a)(1). Claims asserted on behalf of a minor may be brought

---

³ Burrell further contends that "[d]espite the 'concerns' that resulted in the removal and continued withholding of BC and GC," PCDSS made no attempt to remove her third child, V.C., from her custody. Doc. 4 at ¶ 48. However, Burrell also alleges that "PCDSS went outside of standard legal channels by pressuring [Burrell] to give VC up for adoption." Id. at ¶ 61.

⁴ It appears that Plaintiffs are alleging a due process claim, but the Amended Complaint does not indicate whether this claim is for a violation of Plaintiffs' substantive due process rights, their procedural due process rights, or both. See Doc. 4 at ¶¶ 69, 70, 75.

⁵ The undersigned has considered this issue first in the event Burrell's standing to assert claims as G.C.'s representative could be construed as implicating this Court's subject matter jurisdiction. See e.g., Moise v. Shivers, No. 3:24-cv-901-MOC-DCK, 2024 WL 5248187, at *1 (W.D.N.C. Dec. 30, 2024) (stating that Rule 17 of the Federal Rules of Civil Procedure "codifies [the Article III] standing requirement").

7

by a designated representative of the minor, including a "general guardian." Fed. R. Civ. P. 17(c)(1). In the event no representative exists, such claims may be brought through a "next friend" or "guardian ad litem." Fed. R. Civ. P. 17(c)(2). "In most cases, a parent qualifies as a 'general guardian' who may act on behalf of a minor without needing a formal court appointment under Federal Rule 17(c)." Epic Games, Inc. v. C.B., No. 5:19-cv-250, 2019 WL 8334611, at *1 (E.D.N.C. Sept. 27, 2019); see also N.C.G.S. § 35A-1201(a)(6) ("[p]arents are the natural guardians of the person of their minor children…").

Here, Defendants contend that Burrell has no standing to assert claims on behalf of G.C. because the state court has placed "the legal care, custody, and control" of G.C. with PCDSS.

Burrell's parental rights with respect to G.C, though, have not been terminated. Cf. In re Asbury, 125 N.C.App. 143, 146 (1997) ("legal and physical custody of [a minor child] vest[s] in the DSS upon the trial court entering the order of [parental] termination."); In re I.T.P.-L., 194 N.C.App. 453, 290 (2008) ("As [minor] was in the custody of DSS when the trial court terminated Respondents' parental rights, legal and physical custody of [minor] vested in DSS upon the termination."); Carter v. Department of Health and Human Services, No. 5:18-CV-116-BO, 2018 WL 2994818 at *5, n. 4 (E.D.N.C. May 21, 2018) ("plaintiff does not have standing to assert claims on behalf of the child because her parental rights with respect to that child have been terminated");

8

see also Gorsuch v. Dees, 173 N.C.App. 223, 224 (2005) ("Because a prior termination order completely and permanently terminates a parent's rights and responsibilities, we affirm the trial court's ruling that Petitioner had no standing to legitimate A.B.D.").

Defendants have not provided controlling authorities holding that a parent, whose parental rights have not been completely terminated, lacks standing to assert a claim on behalf of his or her child.

Accordingly, on the current record, the undersigned is not persuaded that Burrell lacks standing to assert claims on behalf of G.C.[6]

## B. Defendants' Remaining Arguments

The undersigned has closely considered Defendants' additional arguments. A comprehensive analysis of those arguments, however, is difficult on the current record.

First, the Amended Complaint does not describe which Defendant(s) performed the specific acts Plaintiffs contend were wrongful. Similarly, that pleading does not identify which claims Plaintiffs are attempting to assert against which Defendant(s). Even if it is assumed that Plaintiffs' reference to

---

[6] Burrell argues, in the alternative, that she is G.C.'s "next friend" pursuant to F.R.C.P. 17(c)(2). However, it is not necessary to reach this alternative argument. Further, the undersigned expresses no opinion at this time as to whether a guardian ad litem should be appointed for either or both of the Minor Plaintiffs, if this litigation proceeds.

9

"PCDSS" is intended to refer to all Defendants (despite Plaintiffs' failure to define "PCDSS" in that manner, see Doc. 4 at ¶ 5), and that Plaintiffs are intending to assert all claims against all Defendants, such vague allegations are insufficient to state a claim against any particular Defendant. See Langford v. Joyner, 62 F.4th 122, 125 (4th Cir. 2023) (affirming dismissal of a complaint for failure to state a claim where plaintiff made "only collective allegations against all 'Defendants,' without identifying how each individual Defendant personally interacted with [Plaintiff] or was responsible for the denial of his Eighth Amendment rights"); McKinney v. Cleveland Cnty. Bd. of Educ., No. 22-1697, 2023 WL 4637115, at *3 (4th Cir. July 20, 2023) ('[a]n official can be liable under § 1983 only where it is affirmatively shown that the official charged acted personally in the deprivation of the plaintiffs' rights.'") (quoting Thomas v. City of Annapolis, 851 F. App'x 341, 347–48 (4th Cir. 2021)); Atuahene v. City of Hartford, 10 F. App'x 33 (2d Cir. May 31, 2001) (unpubl.) (affirming dismissal of constitutional and state common law claims where plaintiff "lump[ed] all the defendants together in each claim and provid[ed] no factual basis to distinguish their conduct….").

Second, additional information is needed for the Court to address the question of potential abstention.

Defendants contend that Plaintiffs' claims are barred by immunity or are substantively flawed. See e.g., Evans v. Perry, 578 F. App'x 229, 232 (4th Cir.

10

2014) (unpubl.) ("[s]ocial workers are entitled to absolute immunity for actions taken in a prosecutorial rather than investigative or policing capacity") (citing Vosburg v. Dep't of Soc. Serv., 884 F.2d 133, 135 (4th Cir.1989)); Shirley v. Drake, 76 F.3d 475 (Table), 1999 WL 202671, at *2 (4th Cir. Apr. 12, 1999) (unpubl.) ("An attorney for the state who represents DSS in a proceeding involving the alleged abuse and neglect of a child is entitled to the same protection in her advocacy role that she would have if she were representing the state in a criminal proceeding."); Borom v. Cox, No. 1:21-cv-325-MOC-WCM, 2022 WL 2758614, at *2 (W.D.N.C. July 14, 2022) ("[I]n North Carolina, county DSS agencies are not legal entities capable of being sued.").

Defendants also argue that this Court should abstain from exercising jurisdiction over Plaintiffs' claims pursuant to Younger v. Harris, 401 U.S. 37 (1971). Plaintiffs disagree.

Pursuant to Younger, courts may abstain from exercising federal subject matter jurisdiction in certain limited categories of cases. See Jonathan R. by Dixon v. Justice, 41 F.4th 316, 329 (4th Cir. 2022); see also Braun v. Braun, No. 322CV00357-RJC-DCK, 2023 WL 3236906, at *2 (W.D.N.C. May 3, 2023) (abstaining under Younger where plaintiff claimed that DSS wrongfully transferred her daughter to foster care, that the state court failed to hold the requisite custody hearings, and that anyone who spoke against plaintiff – either in court or by some other means – did so defamatorily); Montgomery v.

11

Johnston Cnty. Dep't of Soc. Servs., No. 5:23-CV-00041-FL, 2023 WL 5170082 at *4 (E.D.N.C. June 2, 2023) ("Younger abstention bars this court from adjudicating Montgomery's requests to be reunited with her grandchildren and change internal JCDSS policies … federal courts routinely conclude that individual child custody proceedings implicate important state interests and warrant abstention").

Here, the status of the State Custody Cases is unknown; neither the Amended Complaint nor the documents submitted by the Polk County Defendants indicate when the cases may be completed[7] and neither side has submitted any supplemental information on this point.

Next, even assuming that the State Custody Cases remain active, neither side has explained sufficiently its position as to whether, and if so how, Defendants' abstention arguments and merits arguments could be addressed simultaneously. On that point, research has not located controlling authority specifically considering whether, in circumstances such as these, the issue of a court's potential abstention should be addressed before a merits analysis is performed or whether a merits analysis could follow if the court were to decide to abstain. At least one circuit, though, has disapproved of such an approach. See Goings v. Sumner Cnty. Dist. Attorney's Off., 571 F. App'x 634, 639 (10th

---

[7] The last order provided by the Polk County Defendants from the State Custody Cases indicates that a continuance was granted until June 11, 2024. Doc. 17.

Cir. 2014) (unpubl.) ("We cannot harmonize the district court's duty to "abstain"—i.e., "refrain from doing something,"—regarding Mr. Goings's claims with its decision to contemporaneously tackle the merits and determine that the complaint failed to state a legally actionable claim. By undertaking this merits analysis, in effect, the district court failed to abide by the time-honored principle of showing "proper respect for state functions.") (internal citation omitted).

These issues—understanding the nature and extent of Plaintiffs' claims and the status of the State Custody Cases—are particularly important in light of the Fourth Circuit's recent explanation of how claims that are subject to Younger abstention are to be handled. Specifically, in Adams Outdoor Advert. Ltd. P'ship v. Beaufort Cnty., 105 F.4th 554 (4th Cir. 2024), the court stated:

> A district court abstaining under Younger must dispose of the claims in different ways depending on the relief requested. When Younger abstention is invoked against claims seeking only injunctive or declaratory relief, those claims are usually (as was done here) dismissed with prejudice. But when the plaintiff requests monetary damages with respect to a claim, a "District Court has no discretion to dismiss rather than to stay" that claim. Damages for federal constitutional violations are not generally available in state criminal proceedings, and so the federal courts will allow a plaintiff to return to request such damages after the state criminal proceedings against him have concluded. Finally, when a party "seeks not only injunctive and declaratory relief but money damages as well," we have held that "the appropriate course is

to abstain by staying proceedings on monetary as well as injunctive and declaratory claims."

Adams Outdoor Advert, 105 F.4th at 559-560 (internal citations omitted).

## IV. Recommendation

The undersigned therefore **RESPECTFULLY RECOMMENDS**:

(1) That the Motions to Dismiss (Docs. 12, 22) be **DENIED WITHOUT PREJUDICE**, and

(2) That Plaintiffs be **DIRECTED TO FILE** a Second Amended Complaint within fourteen (14) days of the Court's order denying the Motions to Dismiss.

Signed: February 28, 2025

W. Carleton Metcalf
United States Magistrate Judge

## Time for Objections

The parties are hereby advised that, pursuant to Title 28, United States Code, Section 636, and Federal Rule of Civil Procedure 72(b)(2), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen (14)** days of service of same. **Responses to the objections must be filed within fourteen (14) days of service of the objections.** Failure to file objections to this Memorandum and Recommendation with the presiding District Judge will preclude the parties from raising such objections on appeal. See Thomas v. Arn, 474 U.S. 140, 140 (1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984).